[Civ. No. 2068.   Second Appellate District.—July 20, 1916.]

## JOHN B. COX, Petitioner, v. WILLIAM C. JEROME, as Auditor of the County of Orange, Respondent.

JUSTICES OF THE PEACE — COMPENSATION — INCREASE DURING TERM OF OFFICE—CONSTRUCTION OF CONSTITUTION.—Justices of the peace of townships are included in the officers referred to in section 9 of article XI of the state constitution, which forbids an increase in the compensation paid to them during their terms of office.

ID.—COUNTY GOVERNMENTS—CREATION OF TOWNSHIPS.—The legislature is required, under section 4 of article XI of the constitution, to establish a system of county governments which shall be uniform throughout the state, and under this section the legislature may provide for township organization, but no such township organization has been established, although the legislature from time to time, by various general laws and statutes known as county government acts, has provided for a uniform government of the counties and subdivisions therein, but the townships mentioned in such acts have no governmental machinery or officers so distinct from the county as to identify such townships as being possessed of functions designed to be possessed by "township organization" referred to in section 4 of article XI of the constitution.

APPLICATION originally made to the District Court of Appeal for the Second Appellate District for a Writ of Mandate to compel the Auditor of Orange County to issue his warrant for services performed by the Justice of the Peace of Santa Ana Township.

The facts are stated in the opinion of the court.

N. D. Meyer, A. W. Rutan, and R. Y. Williams, for Petitioner.

L. A. West, A. E. Koepsel, and Walter Eden, for Respondent.

JAMES, J.—Petition for writ of mandate to require respondent, as auditor of the county of Orange, to issue to petitioner certain warrants upon the treasury of the county, in payment of money which it is alleged is due to petitioner for official services performed as justice of the peace of Santa Ana township. An answer was filed raising issues of law only, and the matter has been submitted for decision.

At the time petitioner assumed office in January, 1915,. the law provided that justices of the peace should receive from the county for services rendered in criminal cases the sum of $75 per month. On the eighth day of August, 1915, an enactment of the legislature [Stats. 1915, p. 1032] became of effect which provided that in counties of the fourteenth class and in townships having a population of fifteen thousand or over, the justices of the peace should receive for services rendered in criminal cases the sum of one hundred dollars per month. The township in which petitioner was acting was found by the census taken to contain over fifteen thousand inhabitants, and his claim was thereafter made for compensation at the increased rate. The vital question presented is as to whether, under the constitutional prohibition against increase of compensation during the term of office of certain officials, petitioner shall have the benefit of the larger amount for his services in criminal cases. Section 9 of article XI of the constitution provides as follows: "The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office. . . . " It is argued that a township justice of the peace is neither a county, city, town, nor municipal officer, and that therefore there is no constitutional restraint placed upon the legislature to increase the compensation of such justice at any time. The legislature is required, under the direction of section 4 of article XI of the constitution, to establish a system of county governments which shall be uniform throughout the state. It is in that section also provided that the legislature may provide for township organization. But no township organization, within the meaning of the section referred to, has been established. While the legislature has from time to time, by various general laws and statutes known as county government acts, provided for a uniform government of the counties and subdivisions therein, it has been held that the townships mentioned in such acts have no governmental machinery or officers so distinct from the county as to identify such townships as being possessed of functions designed to be possessed by "township organization," referred to in section 4 of article XI above cited. In *Ex parte Wall,* 48 Cal. 279, [17 Am. Rep. 425], it was held that the legislature did not, when they divided the county into townships, create "town govern-

ments." It was there said: "The townships have neither
been given personality nor any other of the attributes of a
corporation; no official has been named empowered to call
the inhabitants or voters together for the purposes of con-
sultation and joint action; no act has been passed providing
for any presiding officer, or regulating the mode of conduct-
ing business, or of declaring the result of the action of the
inhabitants or voters when assembled. . . . " It would
then appear that in the classification of township justices of
the peace, these officials either must be referred to as officers
of the county, or become some species of state officers. Under
the constitution as it is now written justices of the peace are
not specifically mentioned as belonging to the judicial depart-
ment of the state; such judicial power is declared to consist
of the Senate, the supreme court, district courts of appeal,
superior courts, "and such inferior courts as the legislature
may establish in any incorporated city or town, township,
county, or city and county." In the case of *People* v. *Cobb,*
133 Cal. 74, [65 Pac. 325], the question as to whether a city
justice of the peace was a city or a county officer was dis-
cussed, and while not given precise definition in the decision,
the court there said: "It may be admitted that city justices
of the peace do not come, or at least do not altogether come,
within the category of county or township officers; but it is
equally clear that they do not come altogether within that
of city officers. They cannot, therefore, strictly speaking,
be said to be either county officers or city officers, for that
would imply that they were exclusively such; but without
much impropriety they may be said to be either. More accu-
rately speaking, they, as well as county justices, form part
of the judicial system of the state. . . . It does not follow,
however, from the peculiar nature of their offices, that jus-
tices of the peace or other judicial officers do not constitute
part of county or city governments." This decision also
affirms the propriety of including provisions affecting jus-
tices of the peace in the county government acts. In reason,
at least, there would seem to be no sound basis for declaring
that township justices of the peace were not intended to be
affected by the provisions of section 9, article XI, of the con-
stitution in the matter of increasing their compensation dur-
ing their terms of office. The legislature has not seen fit
to provide for separate township government. The court

intimates in the Cobb case, *supra,* that a city justice of the peace possesses in some measure qualities of a county officer. In cases in which the question as to the right to increase the compensation of justices or constables was involved, and there have been several, it has never been denied that the provisions of section 9 of article XI affect these officers, and the supreme court has so assumed, without any suggestion that the subject was open for debate. We refer to *Smith* v. *Mathews,* 155 Cal. 752, [103 Pac. 199], and *Crockett* v. *Mathews,* 157 Cal. 153, [106 Pac. 575].

We are not disposed to discuss other questions presented by counsel for respondent in opposition to the prayer of the petition. Our conclusion is that petitioner, as justice of the peace of Santa Ana township, is one of the officers mentioned in the constitutional provision cited, which forbids an increase in the compensation paid to him during his term of office.

The prayer for a peremptory writ is denied.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 18, 1916.