[L. A. No. 11866. In Bank.—August 30, 1930.]

JOHN P. ALLEN et al., Appellants, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

236

Hewitt, McCormick & Crump for Appellants.

Erwin P. Werner, City Attorney, for Respondents.

PRESTON, J.—This appeal involves another attack upon the proceeding taken under the Street Opening Act of 1903, supplemented by the Street Opening Bond Act of 1911 (Deering's General Laws, Acts 8198 and 8199, p. 3309 et seq.), known as the Third Street improvement of the City of Los Angeles, California. It is the identical proceeding which was the subject of the appeal recently considered in the case of *Donovan* v. *City of Los Angeles et al.*, 209 Cal. 552 [288 Pac. 1083]. An extended statement of facts is therefore unnecessary.

On September 1, 1925, the city initiated the proceeding by ordinance, which was approved on September 24th following. Notice of the ordinance of intention was duly published and protests against the improvement and the extent of the assessment district were invited. In response thereto plaintiff Allen made a protest reading as follows: "I hereby protest the assessment of my property for the opening and improvement of West Third Street as shown by your ordinance of intention No. 52725 on the grounds that it is a public benefit and should be paid for by the general public the same as the bridges over the Los Angeles River."

The city, after due notice, then heard said protest and overruled the same. On December 31st thereafter the council passed a final ordinance ordering the performance of the work and directing the city attorney to commence condemnation proceedings against all owners of property necessary for the completion of the improvement. No portion of plaintiffs' land was taken and hence they were not made a party to the said condemnation proceedings, but the notice required by section 11 of said act (Deering's General Laws 1923, Act 8198) was duly given. The condemnation suit went to judgment in due course, the interlocutory judgment having been entered on September 28, 1927. The amount of compensation and damages to property owners was thereby fixed at the sum of $2,428,156.81. To this outlay the city contributed, as stated in said ordinance of

intention, $164,033, leaving as the net amount to be assessed upon the property of said district the sum of $2,264,123.81.

Following said interlocutory judgment an assessment was prepared by the board of public works and lodged with the city clerk, to which certain objections were made and filed. The matter of the assessment and objections thereto was thereafter and on June 25, 1928, heard by the council and later and on November 9, 1928, all objections were overruled except one.

On the last-mentioned day the street opening and widening committee of said council recommended that 34 assessments, aggregating more than $200,000, be decreased and that 59 assessments, aggregating the same amount be increased. The total number of assessments on the roll was 3,769. Thereafter, and on November 14, 1928, the assessment, modified and corrected as recommended by said committee, was confirmed and adopted by the council. The amount of the assessment against the property of appellant Allen remained the same as recommended by the board of public works. This action was commenced on January 2, 1929, and tried from March 11th to 13th. Judgment for defendants was entered on June 5, 1929, and this appeal followed.

Plaintiffs assail the said assessment and the proceeding upon which it is founded upon two grounds: First, that the general description contained in the ordinance of intention and in the notice of public work was fatally misleading and defective, and second, that the said Third Street project was a part of the so-called "Major Traffic Plan" of the City of Los Angeles and was a matter of city-wide interest and benefit to such an extent that a local assessment for any portion of the costs, and certainly for nine-tenths of such costs, was such a gross abuse of discretion by the city council that it rendered said assessment invalid.

So far as the matter of the description is concerned, no complaint is made of the map presented by the city engineer and made an exhibit in this case. We have compared the brief description in the ordinance of intention with the said map and we are unable to say that it is misleading or defective to any extent whatsoever. The criticisms urged against it are either so highly technical as not to merit discussion or else the description contended

for is the equivalent in effect-of the description found in the ordinance. We, therefore, do not feel called upon to go into any extended discussion of said criticisms as we find each and every one of them to be entirely without substantial merit.

■ The second question involves two propositions: First, the act of the council in fixing the limitations of the assessment district, and second, the act of the council in fixing the amount of the expense of the project to be borne by the city as a whole. A mere glance will convince one that both these matters are purely legislative acts of the council. There is no showing that the members of the council acted through fraudulent motives or from any desire to oppress the property owners of said district. The passage of the ordinance must be considered as being a finding of fact upon all prerequisite issues necessary to the action of the council in enacting the legislation. We do not understand appellants to even contend that the fixing of the boundaries of the assessment district or the amount to be contributed by the city as a whole involved any kind of misconduct on the part of the council. The contention that the burden placed upon these property owners is so large that as a matter of law it can be seen on the face of the proceedings that the act of the city was the result of oppression, creating a presumption of fraud, has no substantial foundation. That property abutting upon a street improvement will be specially benefited to some extent does not admit of debate. How much and to what extent it may be benefited· are questions purely within the exclusive province of the city council and there is nothing appearing upon the face of the proceedings to show that they did otherwise than to fix said district after due consideration of the special benefits to result from the construction of the improvement. The same observation is true as to the amount contributed by the city as a whole to the property. It would be well within the power of the city council to make the cost of the entire proceeding rest upon the shoulders of the property owners of a given district especially benefited thereby.

The question here involved is inferentially, if not expressly, decided in the case of *Frank* v. *Maguire*, 201 Cal. 414 [257 Pac. 515]. See, also, in this connection, *Larsen* v. *San Francisco*, 182 Cal. 1, 15 [186 Pac. 757], and *Federal*

*Const. Co.* v. *Ensign,* 59 Cal. App. 215 [210 Pac. 536]. The principle here involved is akin to the principle often set forth by this court to the effect that if a statute does not appear to be unconstitutional, the court will not go behind it and by resort to evidence, undertake to ascertain whether the legislature in its enactment, observed the restrictions which the Constitution imposed upon it as a duty to do, and to the performance of which its members were bound by their oaths of office. (*Stevenson* v. *Colgan,* 91 Cal. 649, 652 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089].)

"If the evidence was required, it must be supposed that it was before the legislature when the act was passed, and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be equivalent to such finding." (Cooley on Constitutional Limitations, p. 187. See, also, *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 386 [103 Pac. 207], and *Taylor* v. *Cole,* 201 Cal. 327, 337 [257 Pac. 40].)

In other words, it is our conclusion that there is nothing on the face of the proceeding nor in the facts of which we take judicial knowledge that will enable us to say that the city authorities did not regularly pursue their authority in the initiation and attempted consummation of the improvement in question.

The judgment is affirmed.

Curtis, J., Richards, J., Seawell, J., and Waste, C. J., concurred.

SHENK, J., Dissenting.—I dissent for the reasons expressed in my dissenting opinion in *Johnson* v. *City of Los Angeles* (L. A. No. 11800), *post,* p. 240 [291 Pac. 395]. The points therein discussed by me were made and argued at length in both cases and are entirely ignored in both of the majority opinions. I am not prepared to apply the theory of section 4½ of article VI of the Constitution to a street proceeding before the city council. Such seems to be the trend of these decisions. The desirability of providing more adequate street facilities cannot alone justify overriding the rights of the property owners in the assessment district. The fact that the assessment against plaintiff in the present action remained the same as recommended by

the board of public works cannot control. That he was assessed at all was sufficient to enable him to attack the proceeding. Under the law as laid down by the majority the property owners are helpless in the face of glaring violations of their constitutional and statutory rights.